**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| INTEL CORPORATION, et al., | § | |
| | § | |
| Plaintiff, | § | Civil No. 6:06-cv-551 |
| v. | § | |
| | § | |
| COMMONWEALTH SCIENTIFIC | § | |
| AND INDUSTRIAL RESEARCH | § | |
| ORGANISATION, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |
| MICROSOFT CORP., et al., | § | |
| | § | |
| Plaintiff, | § | Civil No. 6:06-cv-549 |
| v. | § | |
| | § | |
| COMMONWEALTH SCIENTIFIC | § | |
| AND INDUSTRIAL RESEARCH | § | |
| ORGANISATION, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |
| COMMONWEALTH SCIENTIFIC | § | |
| AND INDUSTRIAL RESEARCH | § | |
| ORGANISATION, | § | |
| | § | |
| Plaintiff, | § | Civil No. 6:06-cv-550 |
| v. | § | |
| | § | |
| TOSHIBA AMERICA INFORMATION | § | |
| SYSTEMS, INC., et al., | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |
| MARVELL SEMICONDUCTOR, et al., | § | |
| | § | |
| Plaintiff, | § | Civil No. 6:07-cv-204 |
| v. | § | |
| | § | |
| COMMONWEALTH SCIENTIFIC | § | |
| AND INDUSTRIAL RESEARCH | § | |
| ORGANISATION, | § | |
| | § | |

1

|  |  |  |
|---|---|---|
| Defendant. | § | |
| _____ | § | |
| **COMMONWEALTH SCIENTIFIC** | § | |
| **AND INDUSTRIAL RESEARCH** | § | |
| **ORGANISATION,** | § | |
| | § | |
| Plaintiff, | § | **Civil No. 6:06-cv-324** |
| v. | § | |
| | § | |
| **BUFFALO TECHNOLOGY (USA), et al.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This order concerns five separate cases all involving U.S. Patent No. 5,487,069 ("the '069 patent") that are currently pending before the Court.  After considering the parties' written submissions and oral arguments, the Court **ORDERS** that cause numbers 6:06-cv-551(Intel), 6:06-cv-549(Microsoft), 6:06-cv-550(Toshiba), and 6:06-cv-324(Buffalo) be consolidated for trial on April 13, 2009 for the issues of infringement, invalidity, willfulness, and all other defenses.  The Court further **ORDERS** that CSIRO file an election concerning what order it wishes to try cause numbers 6:06-cv-551(Intel), 6:06-cv-549(Microsoft), 6:06-cv-550(Toshiba), and 6:06-cv-324(Buffalo) with regard to the issue of damages by February 15, 2009.  Following this election, the Court **ORDERS** that the four cause numbers be bifurcated and set for trial on damages in CSIRO's preferred order starting June 2009 and progressing with another trial every month until complete.  The Court further **ORDERS** that the parties meet and confer on a liability-phase post-trial briefing schedule that completes all briefing well before the start of the first damages trial.

## BACKGROUND

On February 2, 2005, the Commonwealth Scientific and Industrial Research Organization

2

("CSIRO") filed a patent infringement suit in this Court accusing Buffalo Technology (USA), Inc., and Buffalo, Inc., (collectively "Buffalo") of infringing various claims of the '069 patent (the "Buffalo case").  As the case approached trial, CSIRO and Buffalo filed various cross motions for summary judgment asking the Court to resolve these issues before a jury trial on damages.  After the briefing and hearing, the Court found the asserted claims of the '069 Patent were infringed and not invalid as anticipated, obvious, or for a lack of support in the written specification.  6:06-cv-324-LED, Docket No. 228, Memorandum Opinion and Order Granting CSIRO's Motions for Summary Judgment on Validity and Infringement (November 13, 2006).  Buffalo appealed that order to the Federal Circuit.

In May of 2005, Intel Corporation and Dell, Inc. filed a declaratory judgment action against CSIRO in the Northern District of California seeking a declaration that the '069 patent was invalid and not infringed by Intel or its customer Dell (the "Intel case").  Also in May of 2005, Microsoft Corporation, Hewlett-Packard Co., and Netgear, Inc. filed a similar declaratory action in the Northern District of California (the "Microsoft case").  In December 2006, both the Intel and Microsoft cases were transferred to this Court, and CSIRO has since asserted counterclaims of infringement or contributory infringement against all of the declaratory judgment plaintiffs in both cases.

Also in December 2006, CSIRO filed a new suit in this Court (the "Toshiba case") alleging infringement of the '069 patent against Toshiba America Information Systems, Inc., Nintendo of America, Inc., Fujitsu Computer Systems Corporation, ASUS Computer International, D-Link Systems, Inc., Belkin International, Inc., Accton Technology Corporation USA, SMC Networks, Inc., and 3Com Corporation.  Following a case management conference, discovery and dispositive

3

motions were consolidated in the Intel, Microsoft, and Toshiba cases (collectively, the "CIG[1] cases").
All three cases were set for trial on April 13, 2009.

In May of 2007, Marvell Semiconductor Corporation, Inc., Marvell Asia Pte., Ltd., and
Marvell International, Ltd. (collectively "Marvell") filed a declaratory action against CSIRO in this
Court seeking a declaration that the '069 patent was invalid, not infringed, and alternatively asserted
claims of specific performance, declaration of license, breach of contract, and promissory estoppel
(the "Marvell case").  The Marvell case was set for trial in 2010.

Finally, on October 27, 2008 the Federal Circuit remanded the Buffalo case for resolution
of the issues of obviousness, willfulness, and damages and affirmed this Court's judgment in all
other respects.  At that time, the Court ordered the parties in all five actions to file a "joint proposal"
on efficiently resolving the common issues central to all of the cases and to note any disagreements
on how to proceed.  After reviewing the various proposals and hearing the parties' oral arguments,
the Court now sets forth the most efficient, economical, and non-prejudicial manner to try common
issues.[2]

## APPLICABLE LAW

In any complex litigation involving multiple cases and various common and individualized
issues of fact, a court's greatest tools for maximizing efficiency are consolidation and bifurcation.
*See Intellectual Prop. Dev. Corp. v. UA-Columbia Cablevision of Westchester, Inc.*, 34 U.S.P.Q.2d
1605, 1606 (W.D.N.Y. 1997) ("The independent complexity of liability and damage issues common
in patent suits, however, often makes them candidates for special trial management, particularly

---

[1] "Common Interest Group"

[2] For ease of reference, all parties other than CSIRO will be referred to as "Defendants."

4

bifurcation."). Consolidation and bifurcation are governed by Federal Rule of Civil Procedure 42. Cases may be consolidated for trial when the actions involve "a common question of law or fact" in order to avoid "unnecessary costs or delay." FED. R. CIV. P. 42(a). Additionally, "any separate issue" may be severed for trial "in furtherance of convenience or to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). Generally, consolidation and bifurcation are within the sole discretion of the trial court. *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir.1992); *Nat'l Ass'n for Advancement of Colored People of La. v. Michot*, 480 F.2d 547, 548 (5th Cir. 1973).

However, a litigant's Seventh Amendment right to "have only one jury pass on a common issue of fact" limits a court's discretion to bifurcate. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (citing *Gasoline Prods., Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499-500 (1931)). "[T]he issue to be tried [separately] must be so distinct and separate from the others that a trial of it alone may be had without injustice." *Id.* This rule also helps avoid inconsistent or competing jury findings on the same issue. *Id.*

## ANALYSIS

*The Marvell Case (6:07-cv-204)*

Marvell has proposed that it continue on its current timetable with a separate trial on all issues scheduled for May 10, 2010. CSIRO opposes the current timetable as to Marvell's invalidity defenses and suggests that the Court order that Marvell adopt the other Defendants' expert reports and consolidate Marvell's defenses into a single common trial with the rest of the Defendants. There are multiple problems with CSIRO's proposal.

First, Marvell was the last case to be filed. Marvell's fact discovery is not scheduled to close

until October 27, 2009. Shortening Marvell's discovery schedule by over eight months and requiring it to rely on expert opinions it has neither adopted, participated in, or seriously reviewed would strip Marvell of any meaningful participation in its own defense. That result raises serious concerns of prejudice and due process.

Furthermore, Marvell has various alternative causes of action, which are not asserted by the other Defendants. These individual issues and claims alone are enough to warrant a separate trial. Moreover, because Marvell has not yet had an opportunity to fully develop its record, the similarity between Marvell's issues and the other Defendants' is unclear. As mentioned, Marvell has not joined in any expert opinions proffered in the other cases. Marvell's case is simply too premature to consolidate with the other cases.

Accordingly, Marvell will continue on its current timetable pursuant to the Court's October 24, 2007 Scheduling Order (Docket No. 24) with trial in May 2010.

*The Buffalo Case (6:06-cv-324)*

The Buffalo case presents a unique problem. Obviousness, willfulness, and damages are the only issues remaining on remand. While willfulness and damages are clearly individual issues, Buffalo's obviousness defense is also an individual issue. Buffalo's obviousness defense exists only on the record that it built before this Court's November 13, 2006 order dismissing its claims on summary judgement. Thus, Buffalo's obviousness contentions and the other Defendants' contentions are quite different. Currently, Buffalo has only one alleged obviousness combination, which is not included in the CIG defendant's expert reports. Transcript of Status Conference at 31-32, 6:06-cv-551-LED (December 16, 2008). Further complicating matters is the Supreme Court's decision in *KSR International v. Teleflex, Inc.,* 550 U.S. 398 (2007), which altered the obviousness

6

analysis during Buffalo's appeal, prompting Buffalo's alleged need for additional expert opinions on remand.

Despite these complications, during the status conference CSIRO indicated that it would allow Buffalo to adopt the CIG defendants' obviousness contentions and expert reports.[3]  In response to whether CSIRO would permit Buffalo to join in the CIG defendant's obvious combinations, CSIRO stated that it "has no problem with any obviousness combination, your Honor.  We have strong evidence that this type — they can bring in 100, they can bring in 1,000, we don't care.  So whatever it takes — if that is what the Court needs, whatever it takes."  Transcript of Status Conference at 32:3-9, 6:06-cv-551-LED (December 16, 2008).  Buffalo also indicated its willingness to consolidate its case with the CIG defendants.  Transcript of Status Conference at 31:8-12, 6:06-cv-551-LED (December 16, 2008) (responding to the Court's inquiry on its position regarding consolidation: "Your Honor, as long as we get to present the issues that the Federal Circuit remanded the case to you to decide using our expert . . . .").  CSIRO then indicated that its only objection was to cumulative expert testimony and Buffalo's presentation of its own separate expert at trial.  Transcript of Status Conference at 32:8-9, 6:06-cv-551-LED (December 16, 2008).

In response, the CIG defendants assured the Court that Buffalo's obviousness combination was not included in its expert report and Buffalo assured the Court that its expert's testimony on its particular obviousness combination would be brief.  Transcript of Status Conference at 32:8-9, 6:06-cv-551-LED (December 16, 2008).  Furthermore, the CIG defendants volunteered that their expert

---

[3] CSIRO first suggested this course of action in their proposed trial plan: "It was suggested by CSIRO during the meet and confer process that Buffalo could adopt the invalidity contentions and expert reports of the Defendants in [the CIG cases] and participate in a common obviousness trial."  6:06-cv-551-LED, Docket No. 309, Joint Submission Regarding the Parties' Proposed Trial Plans at 8 (Nov 17, 2008).

would be available to testify on behalf of Buffalo's single combination.   Transcript of Status

Conference at 31:13-19, 6:06-cv-551-LED (December 16, 2008).

Since CSIRO has unequivocally waived its objection to Buffalo's adoption of the CIG

defendant's obviousness combinations, there is no barrier to the Buffalo case being consolidated

with the CIG defendant's for trial on obviousness and willfulness.   Whether Buffalo's obviousness

combination will be presented by a common expert or their own expert is an issue better left for the

agreement of the parties.   Accordingly, Buffalo's case is consolidated with the CIG cases for the

issues of obviousness and willfulness.

*The CIG cases (6:06-cv-551, 6:06-cv-549, 6:06-cv-550)*

These cases (now including Buffalo) are currently set for trial on April 13, 2009.  All parties

have agreed that all liability issues will be tried together.   *See* 6:06-cv-551-LED, Docket No. 309,

Joint Submission Regarding the Parties' Proposed Trial Plans at 5 (Nov 17, 2008).[4]  This includes

infringement, invalidity, and all other defenses.   Evidence of whether Defendants had a good faith

belief that the patent was invalid or had no knowledge of the patent's existence is more retated to

invalidity and infringement than to damages.   Therefore, the issue of willfulness will also be tried

with liability.   *See THK Am., Inc. v. NSK Co. Ltd.*, 151 F.R.D. 625, 629-30 (N.D. Ill.1993) ("A

willfulness determination, that is, the defendant's state of mind when it infringed the patent, is a

finding of fact *inextricably* bound to the facts underlying the alleged infringement . . . . [B]ecause

willfulness is determined from the totality of the circumstances, it is the reason why some courts

prefer to include the issue of willfulness with the liability phase of a bifurcated trial.") (emphasis in

---

[4] "The parties agree that all liability issues (including whether there is infringement, the applicability of liability defenses, and the question of validity) should be tried together."

8

original) (citing *Kimberly-Clark Corp. v. James River Corp. of Virginia*, 131 F.R.D. 607, 609 (N.D.Ga.1989)).

Apart from liability, the parties sharply disagree.  CSIRO proposes to bifurcate the damages issues into a series of "bellwether" trials with various groups of defendants in order to promote settlement.  CSIRO insists, however, that the first bellwether trial should not be against Intel.  The CIG defendants propose that liability and damages be combined into a single trial including all CIG defendants.  The CIG defendants also assert that trying their liability and damages cases to separate juries would violate their Seventh Amendment right to trial by jury.

The parties' central dispute on this issue warrants explanation.  The various Defendants occupy different horizontal and vertical portions of the market.  The Defendants can generally be divided into two groups: "chip makers" (Intel[5] and Marvell)*,* and "box makers" (the remainder of the CIG defendants).  The box makers all buy their chips from either or both of the chip makers.  Moreover, the box makers do not all occupy the same commercial space.  For example, Nintendo manufactures video game consoles, and Dell manufactures personal computers.  Though they do not directly compete, they both allegedly make infringing products that retail for various different prices.  The chip makers do not sell their products at the retail level.  CSIRO has alleged indirect infringement against the chip makers and direct infringement against the box makers.  Since the chip makers' microprocessors have a significantly lower unit price than any of the boxes, the CIG defendants prefer that any damages trial either include Intel, or ideally, that Intel's damages be decided first.  CSIRO vigorously asserts that it has the right to proceed against Defendants in any order it wishes.

---

[5] Intel is the only "chip maker" represented in the CIG defendants.

CSIRO contends that a series of damages trials would limit jury confusion over the various interrelationships, deductions, discounts, and prices attributable to each defendant. However, it warns that trial of Intel's damages first would cause unnecessary confusion because Intel's liability is only derivative of the box makers'. The CIG defendants note the inefficiency of having several trials on damages and allege that the removal of chip makers from any of damages trials will create an unfair advantage in favor of CSIRO.

While having multiple trials will always create some inefficiency, proceeding to trial on liability and damages simultaneously in this many cases with this many parties would undoubtedly confuse the issues and the jury. There are several overlapping issues relating to liability and requiring a general understanding of the technology. However, the issue of damages for each defendant presents numerous individualized issues and defenses. Combining the fourteen damage cases into a single trial would create the potential for undue prejudice, confusion, and ultimately inefficiency. The CIG defendant's fears concerning the potential limitation of chip-based royalty evidence is unfounded. Any and all defenses available to Defendants collectively, including the argument that a reasonable royalty should be based at the chip level, will be available to each defendant individually.

However, allowing CSIRO to proceed against any group of defendants, in any order it wishes, would unduly prejudice the CIG defendants. Bifurcation and consolidation must not place CSIRO in a better position than it would have been had all cases proceeded to trial independently. Therefore, there will be four different bifurcated damages trials. CSIRO will elect which case will try damages first, but CSIRO may not break up the groups of defendants represented in the four different cause numbers. CSIRO is required to file its election as to which case, the Buffalo case

(6:06-cv-324), the Intel case (6:06-cv-551), the Microsoft case (6:06-cv-549), or the Toshiba case (6:06-cv-550), will proceed first, second, and so on, by February 15, 2009.

Finally, the CIG defendants argue that having different juries decide liability and damages will violate their Seventh Amendment right to trial by jury.  The CIG defendants rely heavily on *Gasoline Products, Co. v. Champlin Refining Co.* in arguing that liability and damage issues are so intertwined as to make it unjust to hold separate trials. 283 U.S. at 500-01.  Specifically, they assert that their defenses dealing with CSIRO's promise to charge a reasonable and non-discriminatory ("RAND") royalty in licensing its invention will create an overlap of the issues.  Defendants argue that the "existence, scope, and import" of the RAND defense will be important in determining various liability defenses such as estoppel and patent misuse and will also be critical in the *Georgia-Pacific* damages analysis.  *See* Joint Proposal at 20.

Defendants' argument misinterprets the *Gasoline Products* analysis.   The Seventh Amendment does not protect the same evidence from reaching two separate juries, rather it prohibits two juries from deciding the same issues.  *In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed. Cir. 1986 ("the [Seventh Amendment] prohibition is not against having two juries review the same *evidence*, but rather against having two juries decide the same *essential issues*.").  Though the RAND guarantee may be relevant to liability and damages, jurors will be called on to use this evidence for very distinct purposes.  In fact, Defendants' own argument succinctly describes how the evidence of the RAND guarantee will be used differently in an estoppel defense versus the *Georgia-Pacific* damages analysis.  Joint Proposal at 20.

Additionally, Defendants' argument fails because this is precisely the kind of case that warrants bifurcation of liability and damage issues for trial.  There are numerous parties with

11

identical issues relating to liability and a predominance of individual issues relating to damages. Particularly in patent cases, bifurcation can be "an effective method of simplifying factual presentation, reducing costs, and saving time." *Mag Instrument, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 123 F.R.D. 543, 544-45 (N.D. Tex 1988) (quoting *MCI Commc'ns v. AT & T*, 708 F.2d 1081, 1167 (7th Cir.); *see e.g.*, *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir.1964), cert. denied, 379 U.S. 962 (1965); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 117 (E.D. La. 1992). Accordingly, the CIG defendants' Seventh Amendment objections are overruled, and the liability and damages phases of trial will proceed with separate juries.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that cause numbers 6:06-cv-551(Intel), 6:06-cv-549(Microsoft), 6:06-cv-550(Toshiba), and 6:06-cv-324(Buffalo) be consolidated for trial on April 13, 2009 for the issues of infringement*, invalidity, willfulness, and all other defenses.  The Court further **ORDERS** that CSIRO file an election concerning what order it wishes to try cause numbers 6:06-cv-551(Intel), 6:06-cv-549(Microsoft), 6:06-cv-550(Toshiba), and 6:06-cv-324(Buffalo) with regard to damages by February 15, 2009.  Following this election, the Court **ORDERS** that the four cause numbers be bifurcated and set for trial on damages in CSIRO's preferred order starting June 2009 and progressing with another trial every month until complete. The Court further **ORDERS** that the parties meet and confer on a liability-phase post-trial briefing schedule that completes all briefing well before the start of the first damages trial.

So ORDERED and SIGNED this 23rd day of December, 2008.



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**